[No. F004761. Fifth Dist. June 6, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL MONROE, Defendant and Appellant.

COUNSEL

Nuttall, Berman & Magill and Richard P. Berman for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Ward A. Campbell, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

BROWN (G. A.) P. J.—Appellant, Michael Monroe, was convicted in the municipal court of violating Penal Code section 647a[1] (child annoyance and molestation, a misdemeanor) and section 272 (contributing to the delinquency of a minor, a misdemeanor). The court has sentenced appellant to five years formal probation and ordered him to register as a sex offender pursuant to section 290, based solely upon his section 647a conviction.

Appellant petitioned the municipal court to strike the registration requirement; the petition was denied. The appellate department of the superior

---

[1]All code references are to the Penal Code unless otherwise indicated.

court affirmed the denial and certified the cause to this court for review. We ordered the cause transferred here for review.

## FACTS

On January 1, 1982, appellant, a man in his 30's, was an overnight guest in the home of Mr. and Mrs. Douglas F. Mrs. F.'s daughter, Michelle D., who was 10 years old at the time, was also present in the home.

In the late morning or early afternoon, Michelle was sitting on the edge of her bed in her bedroom watching television when appellant entered the room. Appellant knelt down in front of her and placed one of his hands between her legs at her crotch. Appellant assured Michelle that he would not hurt her and then "kind of squeezed and rubbed" her with his hand in her vaginal area for approximately one minute. Michelle became scared and pushed appellant away. Appellant then stated that it was okay if that was the way she wanted it and left the room.

After dinner that evening, Michelle was sitting at the kitchen table playing with stencils. Appellant was seated on the other side of the table, and Michelle's parents were not in the room. Appellant asked Michelle to come around to his side of the table, and she complied with his request, asking him what he wanted. Appellant beckoned her closer, and when she was within a foot and a half of him he reached between her legs and felt her buttocks. He rubbed and squeezed her with his hand for approximately 30 seconds, and then Michelle moved away and returned to her stencils.

A few minutes later, Michelle's mother asked Michelle to help her take out the trash. As she assisted her mother, Michelle told her mother what had happened. Her mother assured her that it would not happen again. When they returned to the house Michelle explained the incidents to both her mother and her stepfather. They agreed upon a plan whereby Michelle would go to her room while her parents watched to see if appellant would follow her into her room.

Michelle went to her room as planned and sat on her bed watching television. Appellant entered her room, knelt down in front of her, and told her to leave the door open that night because he was going to spend the night in her parents' home. He told her not to shut the door all the way and then left her bedroom. While appellant was in Michelle's bedroom, her stepfather approached, looked in the bedroom and saw appellant talking to Michelle.

Later, Michelle's parents confronted appellant in the den. When Mrs. F. explained what Michelle had told them, appellant laughed and denied the incident had occurred.

At trial, appellant admitted touching the victim in the bedroom and in the kitchen but only on her head and knee, respectively.

Following these incidents, Michelle began to have academic and behavioral problems in school.

## DISCUSSION

■ Among other crimes specifically enumerated, section 290 requires a person convicted of violation of section 647a to register as a sex offender. The section uses the mandatory language "shall" and leaves no discretion in the trial judge to not require registration if one or more of the listed violations occurs.

However, if the facts and circumstances of a particular offense indicate that the registration requirement would be cruel and/or unusual punishment under the federal and/or California Constitutions, then the requirement of registration in that particular case would be constitutionally precluded.

Thus, if the issue is raised before imposing the registration requirement, the court should undertake a cruel and/or unusual punishment analysis. Since we will hold in this case that the requirement of registration does not constitute cruel and/or unusual punishment, there is no need to remand the cause to the trial court to make that determination.

Grounded upon the three-pronged test in *In re Lynch* (1972) 8 Cal.3d 410 [105 Cal.Rptr. 217, 503 P.2d 921], appellant argues it is cruel or unusual punishment to require him to register as a sex offender based on his conviction for violating section 647a.[2]

■ *In re Lynch, supra,* 8 Cal.3d 410, held that a sentence may constitute cruel or unusual punishment "if, although not cruel or unusual in its method, it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*Id.,* at p. 424; fn. omitted.) ■ "To aid the administration of the rule, *Lynch* suggested three methods of analysis: (1) examine the nature of the offense and/or the offender, with particular regard to the degree of danger both present to society (*In re Lynch, supra,* 8 Cal.3d at p. 425); (2) compare the challenged penalty with punishments prescribed in the same jurisdiction

---

[2]Section 647a provides in pertinent part: "Every person who annoys or molests any child under the age of 18 is a vagrant and is punishable by a fine not exceeding one thousand dollars ($1,000) or by imprisonment in the county jail for not exceeding six months or by both such fine and imprisonment."

for different offenses, deemed by the above test to be more serious (*id.*, at p. 426); and (3) compare the challenged penalty with punishments prescribed for the same offense in sister jurisdictions (*id.*, at p. 427). "The court has warned that these tests are not to be mechanically applied but serve only as guides. (*People* v. *Wingo, supra,* 14 Cal.3d 169.)" (*People* v. *Williams* (1980) 101 Cal.App.3d 711, 720 [161 Cal.Rptr. 830].)

Initially, it is noted that the *Lynch* analysis has been applied to invalidate the sex offender registration requirements as applied to a conviction for violation of section 647, subdivision (a)—not section 647a. (*In re Reed* (1983) 33 Cal.3d 914, 917, fn. 1 [191 Cal.Rptr. 658, 663 P.2d 216].)

██ Since the transfer of this case to this court on October 29, 1984, we filed our opinion in *People* v. *Tate* (1985) 164 Cal.App.3d 133 [210 Cal.Rptr. 117] (hg. den., Mar. 26, 1985). In *Tate,* we upheld the registration requirement of section 290 as applied to a section 647a conviction against substantially the same contentions that are made herein. We believe that case is substantially determinative of the issues herein. Accordingly, to avoid duplication, we set forth the relevant part of that opinion.

██ "Section 290 requires a person convicted of certain crimes to register with the authorities within 30 days of coming into any county or city for either permanent or temporary residence. (§ 290.) The requirement is based on the assumption that such persons are more likely to repeat the crimes, and that consequently it is desirable to have accurate information as to their whereabouts. (2 Witkin, Cal. Crimes (1963) § 966, p. 918.) The recognized purpose of the section is to assure that persons convicted of the crimes enumerated therein shall be readily available for police surveillance. (*Barrows* v. *Municipal Court* (1970) 1 Cal.3d 821, 825 [83 Cal.Rptr. 819, 464 P.2d 483].)

"Defendant relies upon *In re Reed* (1983) 33 Cal.3d 914 [191 Cal.Rptr. 658, 663 P.2d 216] and *In re King* (1984) 157 Cal.App.3d 554 [204 Cal.Rptr. 39]. *Reed* involved a violation of section 647, subdivision (a),[4] not section 647a.

"To save the constitutionality of section 647, subdivision (a), from a charge of impermissible vagueness, the Supreme Court has 'construed the statute to prohibit only public solicitation or commission of conduct "which involves the touching of the genitals, buttocks, or female breast, for pur-

---

"[4]Subdivision (a) of section 647 provides: 'Every person who commits any of the following acts is guilty of disorderly conduct, a misdemeanor:

'(a) Who solicits anyone to engage in or who engages in lewd or dissolute conduct in any public place or in any place open to the public or exposed to public view.'"

poses of sexual arousal, gratification, annoyance or offense, by a person who knows or should know of the presence of persons who may be offended by the conduct." (See also Note, *Pryor v. Municipal Court: California's Narrowing Definition of Solicitation for Public Lewd Conduct* (1980) 32 Hastings L.J. 461, 474; *In re Anders* (1979) 25 Cal.3d 414, 416 [158 Cal.Rptr. 661, 599 P.2d 1364].)' (*In re Reed, supra,* 33 Cal.3d at p. 918.)

"In the *Reed* case, the defendant was convicted of violating section 647, subdivision (a), when he masturbated in the presence of an undercover officer in a public restroom. The Supreme Court applied a cruel or unusual punishment analysis, using the factors established in *In re Lynch* (1972) 8 Cal.3d 410, 425-429 [105 Cal.Rptr. 217, 503 P.2d 921], and concluded the registration requirements of section 290 could not be enforced for Reed's conviction of violation of section 647, subdivision (a). The court reasoned that the offense was a relatively minor sexual indiscretion between adults, registration was not required for arguably more serious crimes, and California is only one of five jurisdictions which require registration for sex offenses. The court stated: 'Petitioner is not the prototype of one who poses a grave threat to society; nor does his relatively simple sexual indiscretion place him in the ranks of those who commit more heinous registrable sex offenses.' (*In re Reed, supra,* 33 Cal.3d at p. 924.)

"In *In re King, supra,* 157 Cal.App.3d 554, the defendant was found guilty of violating section 314, subdivision (1),[5] when he exposed himself to two teenaged girls. Using the proportionality analysis authorized by *In re Lynch, supra,* 8 Cal.3d 410, the court concluded that the registration requirement of section 290, when applied to this offense, constituted cruel and unusual punishment.

"The offenses which constitute a violation of Penal Code section 647a are more offensive than violations of section 647, subdivision (a), and section 314, subdivision (1). Section 647a contemplates a crime more serious than an indiscreet gesture, public nuisance, or sexual indiscretion. A conviction under section 647a requires motivation of unnatural abnormal sexual interest in children.

"The case of *People* v. *Mills* (1978) 81 Cal.App.3d 171 [146 Cal.Rptr. 411] is more closely in point than either *Reed* or *King* on the facts before us. In *Mills,* the defendant was convicted of lewd and lascivious conduct on a child under the age of 14 years in violation of Penal Code section 288

---

"[5]Section 314 provides in part: 'Every person who willfully and lewdly, either: 1. Exposes his person, or the private parts thereof, in any public place, or in any place where there are present other persons to be offended or annoyed thereby; . . . is guilty of a misdemeanor.' "

and was required to register as a sex offender. In reviewing his challenge to the registration requirement, the Court of Appeal held, '[w]hen viewed in conjunction with the specific offense for which Mills stands convicted, the registration requirement is not disproportionate as to shock one's moral sense. A requirement of registration of a person, albeit drinking, who attempts sexual penetration of a seven-year-old female does not raise the judicial shock eyebrow.' (*Id.*, at p. 179.) The court undertook an *In re Lynch* analysis and concluded that the registration requirement, when applied to an offense involving sexual penetration of a seven-year-old minor, was not cruel or unusual.

 "The object of section 647a is to protect children from sex offenders and to permit apprehension and segregation of such offenders. (*People* v. *Pallares* (1952) 112 Cal.App.2d Supp. 895, 900 [246 P.2d 173]; *People* v. *Carskaddon* (1957) 49 Cal.2d 423, 425 [318 P.2d 4].) Section 647a has been construed as follows: 'When the words annoy or molest are used in reference to offenses against children, there is a connotation of abnormal sexual motivation on the part of the offender. Although no specific intent is prescribed as an element of this particular offense, a reading of the section as a whole in the light of the evident purpose of this and similar legislation enacted in this state indicates that the acts forbidden are those motivated by an unnatural or abnormal sexual interest or intent with respect to children. It should be noted further that the section must be construed reasonably as setting up an objective test for annoyance or molestation; a childish and wholly unreasonable subjective annoyance, arising, for example, from a child's dislike for proper correction by a teacher, is not covered by the section. The annoyance or molestation which is forbidden is in no sense a purely subjective state on the part of the child.' (*People* v. *Pallares, supra,* 112 Cal.App.2d Supp. at pp. 901-902; 2 Witkin, Cal. Crimes (1963) § 620, p. 568; *In re Gladys R.* (1970) 1 Cal.3d 855, 867-868 [83 Cal.Rptr. 671, 464 P.2d 127].)

"Illustrations of acts held to violate section 647a are: *People* v. *La Fontaine* (1978) 79 Cal.App.3d 176 [144 Cal.Rptr. 729], defendant offered a 13-year-old victim money if he would permit the defendant to perform a sexual act upon him; *People* v. *Moore* (1955) 137 Cal.App.2d 197 [290 P.2d 40], defendant lifted an eight-year-old girl by the buttocks and rubbed against her body; *People* v. *McNair* (1955) 130 Cal.App.2d 696 [279 P.2d 800], defendant exhibited his private parts to a seven-year-old.

"Moreover, both section 288 and section 647a represent legislation specifically enacted to protect children from sexual offenders. Children are a class of victims who require paramount protection and '[t]he fundamental legislative purpose underlying section 290 is to assure persons convicted of

such a crime as molestation of children shall be readily available for police surveillance at all times.' (*People* v. *Mills, supra,* 81 Cal.App.3d 171, 176.) Furthermore, the court should tread lightly when approaching matters within the unique province of the Legislature. (*Ibid.*) The court should interfere with the legislative function only if a statute prescribes a penalty ' "out of all proportion to the offense." ' (*Id.,* at p. 178, citing *Robinson* v. *California* (1962) 370 U.S. 660, 676 [8 L.Ed.2d 758, 768, 82 S.Ct. 1417].)[6]

"We conclude the registration requirement for the offense herein is valid and the court erred in ordering the defendant need not register pursuant to section 290." (*People* v. *Tate, supra,* 164 Cal.App.3d at pp. 137-140.)

▇▇ Appellant argues that *People* v. *Tate, supra,* is distinguishable based upon the nature of the offense and the offender as compared to this case. In *Tate* the defendant actually effected a vaginal penetration of the seven-year-old daughter of his live-in girlfriend. In the instant case, appellant was a friend of the family of the victim, who was to stay all night with them. On the first occasion, appellant "squeezed and rubbed" the vaginal area of the 10-year-old victim with his hand for about one minute. The victim then pushed appellant away and he left.

Later that day appellant reached between the victim's legs and squeezed and rubbed her buttocks for about 30 seconds. This incident, like the first, ended when the victim resisted appellant's approach, and both incidents of "rubbing and squeezing" occurred while the victim was fully clothed.

Finally, still later the same day appellant entered the victim's bedroom and told her not to close her door that evening because appellant was going to spend the night with the family.

According to the victim's mother, after this incident occurred the victim started having trouble in school.

Although the contact involved here was through the outside of the victim's clothes, it was in the vaginal and buttocks area, lasted approximately one

---

"[6]The other offenses for which registration is required:
Section 220—assault with intent to commit rape or sodomy;
Section 261, subdivision (2) or (3)—rape;
Section 266—inveiglement or enticement of unmarried female under 18 for purposes of prostitution;
Section 267—abduction of person under 18 for purpose of prostitution;
Section 285—incest;
Section 286—sodomy;
Section 288a—oral copulation;
Section 289—penetration of genitals with a foreign object;
Section 272—any offense involving lewd and lascivious conduct causing delinquency of a minor."

and one-half minutes, and involved two separate instances on the same day. In addition, appellant's final statements to the victim indicate that at least as far as he was concerned there was more (and probably more serious) contact to come.

Given his abnormal sexual touching and byplay and his effort to get the minor to leave the door open that night, the trial judge could well have believed it would have been only a question of time before more egregious sexual contact would have been made.

Admittedly, the "nature of the offender" is quite positive. Appellant had been employed by Pacific Gas and Electric Company for 15 years and had no prior record. He was 30 years of age. A psychologist who interviewed and tested appellant concluded: "I do not consider him to be dangerous to the community, and I do not consider him to be a sexual deviant or to be a threat to others in this manner."[3] The trial court was not compelled to accept the psychologist's prediction that appellant would not recidivate.

Further, we do not lose sight of the observation that "some observers consider child molesters, in general, to be more dangerous, harder to rehabilitate, less able to understand or accept their problems, and more inclined to deny their guilt than the average felon is. (See generally, Duffy & Hirshberg, Sex and Crime (1965) pp. 119-121.)" (*In re Wells* (1975) 46 Cal.App.3d 592, 598 [121 Cal.Rptr. 23]; fn. omitted.)

Considering all of the facts that go into evaluation of the first *Lynch* technique, blended together, it appears that the registration requirement for this offense as committed by this defendant does not shock the conscience or offend fundamental notions of human dignity. (*In re Lynch, supra,* 8 Cal.3d at p. 424.) In addition, it must be remembered that "great deference is ordinarily paid to legislation designed to protect children, who all too frequently are helpless victims of sexual offenses." (*In re Wells, supra,* 46 Cal.App.3d at p. 599.) Indeed, courts should interfere with the legislative function only if the statute prescribes a penalty "out of all proportion to the offense." (*Robinson* v. *California* (1962) 370 U.S. 660, 676 [8 L.Ed.2d 758, 768, 82 S.Ct. 1417] (conc. opn. of Douglas, J.).)

The second prong of the *Lynch* analysis "is to compare the challenged penalty with the punishments prescribed in the *same jurisdiction* for *different offenses* which, by the same test, must be deemed more serious." (*In re*

---

[3]Appellant's motion to take judicial notice of the report of Dr. Allan G. Hedberg, Ph.D., a clinical psychologist, which was before the municipal and superior courts, is granted. Respondent concedes the report should be part of the record.

*Lynch, supra,* 8 Cal.3d at p. 426.) In *Reed,* the court listed "several arguably more serious sex-related misdemeanors for which section 290 registration is *not* mandated: . . ." (*In re Reed, supra,* 33 Cal.3d at p. 925.) Among these are employing a minor to perform prohibited sexual acts (i.e., child pornography) (§ 311.4); rape of a person incapable of giving consent (§ 261, subd. (1)); and prostitution (§ 647, subd. (b)). (*Ibid.*) Given the fact that the commission of "arguably more serious offenses" does not result in registration under section 290, this technique appears to favor appellant.

However, in *People* v. *Mills* (1978) 81 Cal.App.3d 171 [146 Cal.Rptr. 411], the court addressed a similar situation and said, "The fact there are some types of classes of sex offenses which are not made subject to registration does not per se require the finding there is a denial of equal protection. This may be based upon the legislative determination a particular type of offender does not recidivate or recidivates less; some offenses, although touching upon sexual acts, are not so directly concerned or related to the type of conduct which is repetitive, recidivist, in nature. In this [*sic*] final analysis, these are matters for consideration for the Legislature and should be addressed to that body. Here there is a rational basis for Penal Code section 290; to wit: a legitimate state interest in controlling crime and preventing recidivism in sex offenders. The fact all persons who in any way touch upon a violation of sexual mores or behavior are not included would *indicate inferentially a legislative distinction is drawn.*" (*Id.,* at p. 181; italics added.)

It follows that although some crimes which are "arguably more serious" do not require registration, this fact does not necessarily indicate that the registration requirement for the instant offense is unconstitutional. It is the Legislature's prerogative to designate which crimes it considers to be committed by recidivists, and courts should interfere only when the " ' " ' . . . unconstitutionality clearly, positively and unmistakably appears." ' " ' " (*In re Lynch, supra,* 8 Cal.3d at p. 415.)

The third prong of the *Lynch* analysis requires "a comparison of the challenged penalty with the punishments prescribed for the *same offense* in *other jurisdictions* having an identical or similar constitutional provision." (*In re Lynch, supra,* 8 Cal.3d at p. 427.) In *Reed,* the Supreme Court pointed out that only four other states—Alabama, Massachusetts, Nevada and Ohio—require any kind of sex offender registration. "California's mandatory sex offender registration provision is therefore relatively severe under the third *Lynch* test." (*In re Reed, supra,* 33 Cal.3d at p. 926.)

"In this regard it is important to recall the teachings of *Wingo* [*People* v. *Wingo* (1975) 14 Cal.3d 169 (121 Cal.Rptr. 97, 534 P.2d 1001)] that a

disparity in penalty for the same crime between this and other states is only some indication that California's penalty is excessive. *Wingo* warns that this and the other *Lynch* tests are not to be applied with mechanical exactitude, nor is California concerned with conforming our Penal Code to the 'majority rule' or the least common denominator of penalties nationwide. Our codes 'have served as a model for the nation rather than a mere mirror of the laws of other jurisdictions, . . .' (*People* v. *Wingo, supra,* 14 Cal.3d at p. 179.)" (*People* v. *Williams, supra,* 101 Cal.App.3d at pp. 723-724.)

The fact that factors two and three may facially tend to favor appellant does not change our conclusion under the first technique that the registration requirement under the facts of this case is not so "disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch, supra,* 8 Cal.3d 410, 424; fn. omitted.)

Accordingly, the judgment is affirmed.

Hamlin, J., and Best, J., concurred.

A petition for a rehearing was denied June 27, 1985.