[No. A034798. First Dist., Div. Three. Oct. 6, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
DANTE BAYLESS KUN, Defendant and Appellant.

COUNSEL

Albert M. Kun for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Ann K. Jensen and Michael I. Mintz, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BARRY-DEAL, J.—A person convicted of felony cultivation of marijuana is required by Health and Safety Code section 11590[1] to register as a drug offender. We hold that this requirement does not constitute cruel and unusual punishment as applied to appellant, Dante B. Kun. Accordingly, we affirm the judgment.

### Procedural Background

Appellant pled guilty to cultivation of marijuana, a felony, in violation of section 11358. The court suspended imposition of sentence and placed appellant on 3 years' probation, with conditions, including that he serve 30 days in county jail, perform 100 hours of community service, conduct himself in a law-abiding manner, and pay a $1,000 fine and $500 to the restitution fund. In addition, he was advised to register as a drug offender pursuant to section 11590, but this was not a condition of probation. He was further advised that failure to register was punishable as a misdemeanor and would result in a violation of the condition of probation that he obey the law.

Appellant challenges neither the conviction nor the conditions of probation; he argues that the mandatory registration requirement as applied to him violates the constitutional prohibitions against cruel and/or unusual punishment. (U.S. Const., Amend. VIII; Cal. Const., art I, § 17.)[2]

---

[1] All further statutory references are to the Health and Safety Code unless otherwise indicated.

[2] Because he does not challenge the validity of the plea, he was not required to obtain a certificate of probable cause in order to appeal. (*People* v. *Scott* (1984) 150 Cal.App.3d 910, 915 [198 Cal.Rptr. 124].)

*The Facts*

On October 30, 1985, appellant's brother contacted the Novato Police Department, stating that appellant was "dealing drugs" from their parents' house. The police obtained and executed a search warrant, seizing, inter alia, one plastic bag containing fourteen pounds of marijuana, one plastic bag containing two pounds of marijuana, a suitcase containing approximately two and one-half pounds of marijuana, a jar of marijuana seeds, several baggies containing lesser amounts of marijuana, lysergic acid diethylamide (LSD), a rifle in a case, a loaded shotgun, a holster for a .45 caliber pistol which appellant did not have with him, and two triple beam scales.

Appellant was arrested, waived his rights, and told police that he had worked on a "pot farm" for the summer and that the marijuana found in the residence was his compensation for the work he had performed. Appellant stated that he had planned to sell the marijuana in the suitcase, but that he was not a dealer. He said that he had traded marijuana for the LSD, but that he did not use LSD or trade it "for other things."

*Discussion*

When appellant pled guilty to cultivating marijuana, he expressly acknowledged in a written waiver of rights that he would have to register as a drug offender. ■ ■ ■ ■ At the sentencing hearing, appellant objected to the mandatory registration requirements of section 11590 as constituting cruel and unusual punishment.[3] After considering argument by both parties, the trial court stated that it did not think section 11590 was "unconstitutional as to this offense. It may be as to others but not as to [§] 11358."

Section 11590[4] provides that a person convicted of certain felony drug offenses, including cultivation of marijuana, must register with the head of

---

[3] A registration requirement is clearly a form of punishment. (*In re Reed* (1983) 33 Cal.3d 914, 919-922 [191 Cal.Rptr. 658, 663 P.2d 216].)

[4] Section 11590 provides, in pertinent part: "(a) Any person who, on or after the effective date of this section, is convicted in the State of California of any offense defined in Section 11350 [possession of designated controlled substances], 11351 [possession or purchase for sale of designated controlled substances], 11351.5 [possession of cocaine for sale], 11352 [sale of designated controlled substances], 11353 [adult inducing or using minor to violate certain provisions], 11354 [minor inducing or using minor to violate certain provisions], 11355 [sale or furnishing substance falsely represented to be a controlled substance], 11357 [unauthorized possession of marijuana], 11358 [cultivation, harvesting, or processing of marijuana], 11359 [possession of marijuana for sale], 11360 [sale of marijuana], 11361 [adults employing minors to sell or selling marijuana to minors], 11363 [planting, cultivating, or harvesting of peyote], 11366 [operating or maintaining a place where controlled substances are unlawfully sold, given away, or used], 11368 [forging prescription for narcotic drug], or 11550 [persons unlawfully under the influence of controlled substances], or any person who is, on or after

the local law enforcement agency of the city or county in which he or she resides. ■ The purpose of this requirement is analogous to that of the sex offender registration requirements of Penal Code section 290, which is " 'to assure that persons convicted of the crimes enumerated therein shall be readily available for police surveillance at all times because the Legislature deemed them likely to commit similar offenses in the future.' [Citations.]" (*In re Reed, supra,* 33 Cal.3d at p. 919.) "However, if the facts and circumstances of a particular offense indicate that the registration requirement [of Pen. Code, § 290] would be cruel and/or unusual punishment under the federal and/or California Constitutions, then the requirement of registration in that particular case would be constitutionally precluded." (*People* v. *Monroe* (1985) 168 Cal.App.3d 1205, 1209 [215 Cal.Rptr. 51].)

Appellant contends that is the case here. ■ "[T]he determination of whether a legislatively prescribed punishment is constitutionally excessive is not a duty which the courts eagerly assume or lightly discharge." (*In re Lynch (*1972) 8 Cal.3d 410, 414 [105 Cal.Rptr. 217, 503 P.2d 921].) "Whether a particular punishment is disproportionate to the offense is, of course, a question of degree. The choice of fitting and proper penalties is not an exact science, but a legislative skill involving an appraisal of the evils to be corrected, the weighing of practical alternatives, consideration of relevant policy factors, and responsiveness to the public will; in appropriate cases, some leeway for experimentation may also be permissible. The judiciary, accordingly, should not interfere in this process unless a statute prescribes a penalty 'out of all proportion to the offense' [citations], i.e., so severe in relation to the crime as to violate the prohibition against cruel or unusual punishment." (*Id.,* at pp. 423-424.)

The court in *In re Lynch, supra,* 8 Cal.3d at pages 425-429, identified three techniques used by courts to determine whether a penalty constitutes cruel and unusual punishment. These were summarized by the *Reed* court (*In re Reed, supra,* 33 Cal.3d at p. 923): "(1) an examination of 'the nature of the offense and/or the offender, with particular regard to the degree of danger both present to society'; (2) a comparison of the challenged penalty with those imposed in the same jurisdiction for more serious crimes; and (3) a comparison of the challenged penalty with those imposed for the same offense in different jurisdictions. [Citation.]"

such date, discharged or paroled from a penal institution where he [or she] was confined because of the commission of any such offense, or any person who is, on or after such date, convicted in any other state of any offense which, if committed or attempted in this state, would have been punishable as one or more of the above-mentioned offenses, shall within 30 days after the effective date of this section or within 30 days of his [or her] coming into any county or city, or city and county in which he [or she] resides or is temporarily domiciled for such length of time, register with the chief of police of the city in which he [or she] resides or the sheriff of the county if he [or she] resides in an unincorporated area. . . . [¶] (c) This section does not apply to a conviction of a misdemeanor under Section 11357 or 11360."

■ *Nature of the offense and the offender.* In considering the nature of the offense, we must consider the facts of the crime in question, including factors such as motive, the manner in which it was committed, the extent of appellant's involvement, and the consequences of his acts. In considering the nature of the offender, we focus on the individual and ask whether the punishment is grossly disproportionate to the defendant's individual culpability, as shown by such factors as his age, prior criminality, personal characteristics, and state of mind. (*People* v. *Dillon* (1983) 34 Cal.3d 441, 479 [194 Cal.Rptr. 390, 668 P.2d 697].)

■ The Legislature has determined that cultivation of marijuana is a serious offense; it is the beginning of a process which ultimately places an illegal substance in the hands of great numbers of consumers. In *People* v. *Mayoff* (1986) 42 Cal. 3d 1302, 1308-1309, footnote 2 [233 Cal.Rptr. 2, 729 P.2d 166], our Supreme Court addressed the seriousness of the offense as well, stating, "The Attorney General explains that [the] massive law enforcement effort [to combat marijuana cultivation] stems from the magnitude of the cultivation problem, related incidents of violence, and the consequent dangers to normal recreational use of California's back country. As he notes, the 1983 final report of the joint state-federal Campaign Against Marijuana Planting (CAMP) estimates that 80 percent or more of rural marijuana growers in 14 participating counties guard their plots with firearms during the cultivation and harvest seasons to prevent 'poaching.' A number of deaths and serious injuries have resulted. (See, e.g., *People* v. *Dillon* (1983) 34 Cal.3d 441 [194 Cal.Rptr. 390, 668 P.2d 697].) Some have involved innocent and accidental intruders. Moreover, precisely because the growers seek to operate in secret, they have retreated into remote areas, including public lands, traditionally frequented by hikers, campers, fishermen, and hunters. The transformation of rural tracts formerly open to recreational use into illegal armed camps posing a danger to innocent wanderers is a major social and environmental problem which itself implicates precious personal freedoms."

We must also consider whether the registration requirement is grossly disproportionate to appellant's individual culpability. Appellant argues that he does not pose a grave threat to society, was honorably discharged from the military, has been steadily employed, and has no history of prior arrests. Although appellant has no prior criminal record, his involvement in the offense was substantial. He possessed more than 18 pounds of marijuana for sale or distribution and had a rifle and a shotgun available to protect his supply. He was planning to sell some of the marijuana and had exchanged some for LSD. Given the quantity of marijuana and the presence of weapons to defend it, both the offense and the offender present a significant danger to society.

*Penalties for more serious crimes.* Appellant claims that other more serious crimes such as robbery, burglary, and arson do not require registration. Those crimes, however heinous, involve a limited number of victims. The Legislature has recognized that certain felony-drug offenses, including cultivation of marijuana, involve potentially large numbers of victims and that the appropriate punishment for cultivation of marijuana differs from the punishment for robbery, burglary, and arson. Persons convicted of those crimes face substantial prison terms. (See, e.g., Pen. Code, §§ 213, 461, 451.) It cannot be said that robbery, burglary, and arson are punished less severely than cultivation of marijuana simply because no registration is required. Although a registration requirement is a form of punishment, its primary purpose is regulatory, and it is the function of the Legislature to determine the methods most likely to deter a specific criminal activity. In any event, even if appellant's argument in this regard had some merit, the *Lynch* techniques for determining whether a particular punishment is impermissible were not intended as absolute rules but only as guides to be used in testing the validity of a penalty. (*In re Jones* (1973) 35 Cal.App.3d 531, 541 [110 Cal.Rptr. 765].)

In support of his position, appellant cites, as he did below, *In re Reed, supra,* 33 Cal.3d 914, and *In re King* (1984) 157 Cal.App.3d 554 [204 Cal.Rptr. 39], in which two convicted misdemeanants successfully challenged on cruel and unusual punishment grounds the requirement under Penal Code section 290 that they register as sex offenders. Appellant's reliance on *Reed* and *King* is misplaced. Reed committed a misdemeanor violation of Penal Code section 647, subdivision (a) (soliciting " 'lewd or dissolute conduct' " from an undercover vice officer in a public restroom). (*In re Reed, supra,* at p. 917.) King committed a misdemeanor violation of Penal Code section 314, subdivision 1 (indecent exposure). (*In re King, supra,* at p. 556.) Both courts concluded that the continuing penalty of sex offender registration was out of all proportion to the relatively minor offenses involved. (*In re Reed, supra,* at p. 926; *In re King, supra,* at p. 558.)

Here, appellant was convicted of a felony after he admitted to working on a marijuana farm. He was also in possession of over 18 pounds of marijuana. This felony offense cannot be compared with the minor sexual transgressions discussed in *In re Reed* and *In re King.*

*Other jurisdictions.* Appellant cites Justice Harold C. Brown's dissent in *In re Jones, supra,* 35 Cal.App.3d at pages 542-554, in support of his argument that California penalties for marijuana offenses exceed those of most other jurisdictions. Appellant also asserts, without authority, that "Few other jurisdiction[s] require the registration of marijuana offenders." ▮ ▮ Because the validity of enactments will not be questioned unless their

unconstitutionality clearly, positively, and unmistakably appears (*People* v. *Mills* (1978) 81 Cal.App.3d 171, 176 [146 Cal.Rptr. 411]), appellant's failure to substantiate his claim compels us to reject it.

In *People* v. *Williams* (1980) 101 Cal.App.3d 711, 723-724 [161 Cal.Rptr. 830], the Court of Appeal stated about this last technique, "it is important to recall the teachings of *Wingo* [*People* v. *Wingo* (1975) 14 Cal.3d 169 (121 Cal.Rptr. 97, 534 P.2d 1001)] that a disparity in penalty for the same crime between this and other states is only some indication that California's penalty is excessive. *Wingo* warns that this and the other *Lynch* tests are not to be applied with mechanical exactitude, nor is California concerned with conforming our Penal Code to the 'majority rule' or the least common denominator of penalties nationwide. Our codes 'have served as a model for the nation rather than a mere mirror of the laws of other jurisdictions, . . .' (*People* v. *Wingo, supra,* 14 Cal.3d at p. 179.)" (See also *People* v. *Monroe, supra,* 168 Cal.App.3d at pp. 1215-1216.)

### Conclusion

In *National Organization for Reform of Marijuana Laws* v. *Gain* (1979) 100 Cal.App.3d 586, 594 [161 Cal.Rptr. 181], the Court of Appeal stated that "In reviewing challenges to the constitutionality of legislation, courts must presume that the enactment is valid, and that the Legislature ascertained facts to support its action. [Citation.] Where the validity of a statute depends on a question that is at least debatable, courts properly defer to the legislative judgment. [Citation.] If there is a legitimate scientific debate regarding whether marijuana is harmful it follows that the legislative determination that it should be regulated is not without rational basis." The court concluded that the enforcement of marijuana laws does not subject persons to cruel and unusual punishment. (*Id.,* at pp. 595-596.) We conclude that the registration requirement of section 11590 does not subject appellant to cruel and/or unusual punishment.

The judgment is affirmed.

White, P. J., and Scott, J., concurred.