[No. H004575. Sixth Dist. June 26, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT LADANIO, Defendant and Appellant.

COUNSEL

Harvey R. Zall, State Public Defender, under appointment by the Court of Appeal, and Kent Barkhurst, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Stan M. Helfman, David H. Rose and Rene A. Chacon, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BRAUER, Acting P. J.—Robert Ladanio, a minor, was convicted of two counts of attempted first degree murder (Pen. Code, §§ 187, 664) and sentenced to life in prison with the possibility of parole. On appeal he contends that the trial court erred in sentencing him to state prison instead

of committing him directly to the California Youth Authority (CYA). We find no error and affirm the judgment.

## PROCEDURAL HISTORY

The 17-year-old defendant was tried as an adult in superior court, having been found unfit for juvenile court treatment. (Welf. & Inst. Code, § 707.) The victims were his mother and stepsister, whom he had tried to kill with a butcher knife. The court also found true an allegation that in the course of attempting to kill his mother he had inflicted great bodily injury on her within the meaning of Penal Code section 12022.7.

Defendant received concurrent sentences of life in prison with the possibility of parole for the two attempted murders, and three additional years for the great bodily injury enhancement. Pursuant to Welfare and Institutions Code section 1731.5, subdivision (a)(2),[1] defendant was ruled ineligible for direct commitment to the CYA. The court, however, ordered the defendant to be housed at CYA by authority of section 1731.5, subdivision (c). It also stayed execution of the enhancement term so that defendant would be eligible for parole by the time he reached 25, the age at which he otherwise would have been required to be returned to state prison under that section.

On appeal, defendant contends: 1) His sentence is indeterminate; therefore, under *In re Jeanice D.* (1980) 28 Cal.3d 210 [168 Cal.Rptr. 455, 617 P.2d 1087], he was eligible for commitment to the Youth Authority; 2) section 1731.5 and Penal Code section 664 should be construed to permit his commitment to CYA; and 3) if he is statutorily ineligible for CYA commitment, section 1731.5 and Penal Code section 664 violate his constitutional right against being subjected to cruel and unusual punishment.

## DISCUSSION

Section 1731.5, subdivision (a) prohibits the commitment to CYA of any juvenile who has been sentenced to "imprisonment for life." In *In re Jeanice D., supra,* 28 Cal.3d at page 221, the California Supreme Court held that minors receiving sentences of "25 years to life," the punishment specified since 1978 for first degree murder, were eligible for CYA commitment because their sentences were indeterminate. █ Defendant argues that

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise noted.

life with the possibility of parole is also an indeterminate sentence;[2] hence, he too should be eligible for direct commitment.

Since the Determinate Sentencing Law was enacted in 1976 (Stats. 1976, ch. 1139), judges have been required to set the term of confinement at a fixed number of years rather than the indefinite "X years to life" or "not less than X years" of the previous indeterminate sentencing system. (*People v. Yates* (1983) 34 Cal.3d 644, 649 [194 Cal.Rptr. 765, 669 P.2d 1].) The "25 years to life" term for first degree murder is one of the few indeterminate sentences that remain. (*Ibid.*)

Presumably, defendant would like us to read his life sentence as "seven years to life" or "not less than seven years." This we will not do. Such an interpretation would render all sentences indeterminate unless they are imposed without the possibility of parole. The Legislature made it abundantly clear that, with limited exceptions, all sentences were to be determinate. (Pen. Code, §§ 1168, 1170.)

Moreover, independent of its character as determinate or indeterminate, defendant's sentence is clearly within the reach of section 1731.5. This statute excludes from CYA commitment juveniles who, like defendant, are sentenced to "imprisonment for life." Nowhere does it distinguish between those who are eligible for parole and those who are not.

■ Defendant's reliance on *Jeanice D.* is misplaced. In that case, the Supreme Court considered the impact of the amendment to Penal Code section 190 on a youth's eligibility for CYA. Before 1978, that section had prescribed the punishment for first degree murder as death, life without possibility of parole, or "confinement in state prison for life." (Stats. 1977, ch. 316, § 5.) In distinguishing the post-1978 version of section 190, the court observed that the previous " 'straight' " life sentence had rendered juvenile defendants ineligible for CYA commitment. (28 Cal.3d at p. 218.)

Since the decision in *Jeanice D.,* Penal Code section 664 was amended to increase the punishment for attempted first degree murder from five, seven, or nine years (Stats. 1978, ch. 1166, § 2) to life with possibility of parole.

---

[2] In dictum, one court agreed with this proposition. (*People v. Garcia* (1981) 115 Cal.App.3d 85, 113, fn. 19[171 Cal.Rptr. 169].) However, that court's opinion was based largely on Penal Code section 1168, which at that time made offenses specifying "three time periods of imprisonment" subject to the Determinate Sentencing Law (DSL) (Stats. 1977, ch. 165, § 14, p. 647). In 1984, this section was amended to include within the purview of the DSL offenses "for which only a single term of imprisonment in state prison is specified." (Stats. 1984, ch. 1432, § 8.) A term of "imprisonment for life" as prescribed in Penal Code section 664 thus clearly qualifies as a determinate sentence.

(Stats. 1986, ch. 519.) The specified punishment that once kept convicted first degree murder defendants out of the Youth Authority now disqualifies only those convicted of *attempted* first degree murder. This peculiar result may be, as defendant suggests, a legislative oversight. He also points out that under section 1732.5, persons *over* the age of 18 who are convicted of a serious felony as defined in Penal Code section 1192.7 are ineligible for CYA commitment; however, no statutory provision evinces a similar intent to restrict eligibility for those under 18. Accordingly, defendant urges this court to construe both section 1731.5 and Penal Code section 664 as permitting defendants in his circumstances to be eligible for CYA commitment.

But it is not the function of this court to define crimes and prescribe punishments. (*In re Lynch* (1972) 8 Cal.3d 410, 414 [105 Cal.Rptr. 217, 503 P.2d 921].) As noted in *Jeanice D.,* "Although there may be no affirmative indication that the drafters of [§ 1731.5] specifically had this consequence in mind, by the same token there is similarly no indication that the drafters intended to preclude the normal application of section 1731.5." (28 Cal.3d at p. 218.) In the absence of statutory ambiguity or other constitutional infirmity, we cannot disregard the plain language of these statutes.

 Defendant contends, however, that applying these statutes so as to deny him a direct commitment to CYA would violate his constitutional right against cruel and unusual punishment. Had he succeeded in killing his mother and stepsister, he would have been eligible for CYA commitment; but because he failed to complete the crime of murder, he is precluded from that opportunity. This disparity, according to defendant, constitutes "unusual" punishment within the meaning of the federal and state Constitutions. (U.S. Const., 8th Amend.; Cal. Const., art. I, § 17.)

 Although the Legislature is accorded "the broadest discretion possible in enacting penal statutes and in specifying punishment for crime, . . . the final judgment as to whether the punishment it decrees exceeds constitutional limits is a judicial function." (*People* v. *Anderson* (1972) 6 Cal.3d 628, 640 [100 Cal.Rptr. 152, 493 P.2d 880].) A punishment may be excessive in violation of the Eighth Amendment if it involves the "unnecessary and wanton infliction of pain," or if it is "grossly out of proportion to the severity of the crime." (*Gregg* v. *Georgia* (1976) 428 U.S. 153, 173 [49 L.Ed.2d 859, 875, 96 S.Ct. 2909].) In California, "a punishment may violate article I, section 6 [now section 17], of the Constitution if, although not cruel or unusual in its method, it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch, supra,* 8 Cal.3d at p. 424, fn. omitted.) "Only when the punishment is out of all proportion to the offense and is clearly an extraordinary penalty for a crime of ordinary gravity

committed under ordinary circumstances, do the courts denounce it as unusual." (*People* v. *Flores* (1986) 178 Cal.App.3d 74, 88-89 [223 Cal.Rptr. 465].)

In determining disproportionality under this standard, we undertake a case-by-case, totality-of-the-circumstances analysis (*Cabana* v. *Bullock* (1986) 474 U.S. 376, 386 [88 L.Ed.2d 704, 716-717, 106 S.Ct. 689]), guided by objective factors. These factors include the nature of the offense and the harshness of the penalty, the sentences imposed for more serious crimes in the same jurisdiction, and sentences imposed for commission of the same crime in other jurisdictions. (*Solem* v. *Helm* (1983) 463 U.S. 277, 291 [77 L.Ed.2d 637, 650, 103 S.Ct. 3001]. See also *In re Lynch, supra,* 8 Cal.3d at pp. 426, 431.)

■ Defendant urges this court to focus on the second prong of the disproportionality test and find that a sentence of life in prison is disproportionately more severe than a sentence of 25 years to life with eligibility for CYA.

Unquestionably, defendants convicted of first degree murder have a sentencing advantage in being eligible for commitment to CYA. Defendants committed to CYA receive the benefit of programs designed for rehabilitation and treatment (*In re Ismael A.* (1989) 207 Cal.App.3d 911 [255 Cal.Rptr. 126]), whereas the purpose of imprisonment is punishment. (Pen. Code, § 1170.) However, we must examine the entire sentencing scheme before concluding that this disparity rises to the level of a constitutional violation.

First, we note that eligibility for CYA commitment does not guarantee that a defendant will be committed there. (*People* v. *Garcia, supra,* 115 Cal.App.3d 85, 111.) Whether to sentence an eligible defendant to prison or to CYA is a matter within the trial court's discretion, after considering the opinion of the Youth Authority concerning the defendant's amenability to treatment there. (§ 707.2.) Moreover, if a juvenile defendant convicted of first degree murder is sentenced to prison, he or she must serve at least sixteen years, eight months before becoming eligible for parole, in contrast to the seven-year minimum for attempted murder. (*People* v. *Superior Court (Dillon)* (1981) 115 Cal.App.3d 687, 691 [185 Cal.Rptr. 290]; *People* v. *Garcia, supra,* 115 Cal.App.3d at p. 110.) Finally, defendants like Ladanio who are not eligible for CYA commitment may still be *housed* there and participate in its programs until they reach 25 years of age. (§ 1731.5, subd. (c).) Unless sentence enhancements extend the length of confinement, a person housed at CYA will, assuming good conduct, be released on parole without ever seeing the inside of state prison. It was for this very purpose

that the trial court in the present case stayed execution of the great bodily injury enhancement.

Defendant does not even attempt to argue that either of the other disproportionality factors is applicable here. He does not deny that the gravity of the offense was of great magnitude, nor does he contend that this state punishes attempted murder more severely than do most other jurisdictions. Thus, we cannot agree with defendant that his sentence is so "grossly disproportionate" that it "shocks the conscience."

The disparity in sentencing treatment between juvenile defendants convicted of attempted murder and those convicted of the completed crime is unquestionably anomalous. Accordingly, we urge the Legislature to address this issue. Since neither section 1731.5 nor Penal Code section 664 is clearly unconstitutional, we must leave this task to the Legislature or the voters of this state.

The judgment is affirmed.

Capaccioli, J., and Premo, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 12, 1989. Mosk, J., was of the opinion that the petition should be granted.