[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 569 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 570 
OPINION
Appellant was convicted following a jury trial of misdemeanor indecent exposure in violation of Penal Code section 314, subdivision 1.[1] On appeal, he challenges that part of this sentence which requires him to register as a sex offender pursuant to section 290.
The evidence presented at trial shows that Renee Lepre (hereafter Renee) was working as a street artist in front of the Shreve's Building in San Francisco on March 16, 1991. Around 11 a.m., in a nearby "alleyway," she observed appellant "exposing himself and soliciting women. . . ." As pedestrians passed the alleyway, appellant pointed to them and yelled: "Come and get some of this. Look at this. You need some of this." He also made other "lewd gestures" or comments "about sexual acts" to women who walked by the alley. As he yelled, appellant was "stroking his private parts," and had an "erection."
Renee looked unsuccessfully for a "security person" in Shreve's to report the incident, then returned to the street to "finish setting up" her display. As *Page 571 
she was speaking with another street artist, Lynn Sunday (hereafter Lynn), appellant approached and said: "You missed it; you should have been there; you should have had some; oh, you missed it; you should have been there." The women moved across the street and away from appellant. Lynn and another woman went in search of a police officer, while Renee returned to her car to get her display.
Appellant followed Renee to her car and kept repeating, "I'm going to help you" as he was "pulling" and "tugging" on her jewelry display. Appellant appeared "hostile" to Renee, as though he might "attack" her. Lynn returned to Renee's location and asked if she could help. Appellant responded by stating: "You know what you need? You need your pussy licked. . . ." Then he "swung around and left," striking a passing pedestrian as he did so.
Appellant walked rapidly away but was apprehended momentarily upon the arrival of the police. The women described appellant as "intimidating," "hostile" and "scary."
Appellant contends that the trial court violated the constitutional proscription against cruel and unusual punishment by imposing a registration requirement under section 290 for his misdemeanor conviction of indecent exposure. His argument is twofold: first, as a matter of law the mandatory sex offender registration requirement of section 290 constitutes cruel and unusual punishment when applied to a misdemeanor conviction of indecent exposure; second, even if we engage in a "case-by-case analysis," the evidence fails to support the trial court's finding that imposition of a registration requirement upon him was constitutional.
(1) A penalty offends the proscription against cruel and unusual punishment when it is "so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (In re Lynch
(1972) 8 Cal.3d 410, 424 [105 Cal.Rptr. 217, 503 P.2d 921] (hereafter Lynch); In re DeBeque (1989) 212 Cal.App.3d 241, 248 [260 Cal.Rptr. 441].) "Whether a particular punishment is disproportionate to the offense is, of course, a question of degree. The choice of fitting and proper penalties is not an exact science, but a legislative skill involving an appraisal of the evils to be corrected, the weighing of practical alternatives, consideration of relevant policy factors, and responsiveness to the public will; in appropriate cases, some leeway for experimentation may also be permissible. The judiciary, accordingly, should not interfere in this process unless a statute prescribes a penalty `out of all proportion to the offense' [citations], i.e., so severe in relation to the crime as to violate the prohibition against *Page 572 
cruel or unusual punishment." (Lynch, supra, at pp. 423-424;People v. Kun (1987) 195 Cal.App.3d 370, 374 [240 Cal.Rptr. 564] .)
(2) "It is a defendant's burden to prove the punishment prescribed for his or her offense is unconstitutional. (People
v. Wingo (1975) 14 Cal.3d 169, 174, 183 [121 Cal.Rptr. 97,534 P.2d 1001].) Statutes prescribing punishments, as with other statutes, must be upheld unless they are clearly and unmistakably shown to be unconstitutional. [Citation.]" (People v.Almodovar (1987) 190 Cal.App.3d 732, 739 [235 Cal.Rptr. 616].)
(3a) A tripartite test has been established to determine whether a penalty offends the prohibition against cruel and unusual punishment. First, courts examine the nature of the offense and the offender, "with particular regard to the degree of danger both present to society." Second, a comparison is made of the challenged penalty with those imposed in the same jurisdiction for more serious crimes. Third, the challenged penalty is compared with those imposed for the same offense in other jurisdictions. (In re Reed (1983) 33 Cal.3d 914, 923 [191 Cal.Rptr. 658, 663 P.2d 216]; Lynch, supra, 8 Cal.3d 410, 425-427; People v. Hernandez (1985) 169 Cal.App.3d 282, 288 [215 Cal.Rptr. 166].) In undertaking this three-part analysis, we consider the "totality of circumstances" surrounding the commission of the offense. (People v. Dillon (1983) 34 Cal.3d 441, 479 [194 Cal.Rptr. 390, 668 P.2d 697]; People v. Ladanio
(1989) 211 Cal.App.3d 1114, 1120 [260 Cal.Rptr. 12]; People v.Hernandez, supra, at pp. 288-289.)
(4a) Relying on In re Reed, supra, 33 Cal.3d 914 (hereafterReed) and In re King (1984) 157 Cal.App.3d 554 [204 Cal.Rptr. 39] (hereafter King), appellant maintains that imposition of a registration requirement for a misdemeanor violation of section314, subdivision 1 is inherently cruel and unusual punishment, even without consideration given to the specific facts of the case or particular nature of the offender. In Reed, our high court declared that "insofar as section 290 requires . . . registration of persons convicted under section 647(a), it is void under article I, section 17, of the California Constitution" as cruel and unusual punishment. (33 Cal.3d at p. 926, italics added.) In King, the court, adhering to the decision in Reed,
concluded: "[T]he continuing penalty of sex offender registration is out of all proportion to the crime of misdemeanor indecent exposure. Registration pursuant to section 290 cannot constitutionally be imposed as punishment for persons convicted of misdemeanors under section 314.1." (157 Cal.App.3d at p. 558.)
We are not persuaded that Reed or King must be read as proscribing as cruel and unusual punishment mandatory sex offender registration in all *Page 573 
cases of misdemeanor violations of sections 647, subdivision (a) and 314, subdivision 1, respectively. The established three-pronged test for cruel and unusual punishment has been characterized as a "flexible and progressive" approach rather than a rigid standard. (Reed, supra, 33 Cal.3d at p. 923.)(3b), (4b) The three prongs or factors enumerated in Lynch
are not absolute tests to be mechanically applied but serve only as guides. (People v. Wingo (1975) 14 Cal.3d 169, 179 [121 Cal.Rptr. 97, 534 P.2d 1001]; In re DeBeque, supra,
212 Cal.App.3d at p. 249; People v. Monroe (1985) 168 Cal.App.3d 1205, 1210 [215 Cal.Rptr. 51]; People v. Williams (1980)101 Cal.App.3d 711, 720 [161 Cal.Rptr. 830].) "The importance of each prong depends on the specific facts of each case and application of the first prong alone may suffice in determining whether a punishment is cruel and unusual. [Citation.]" (In re DeBeque,supra, 212 Cal.App.3d at p. 249.) (5) A determination that a punishment is disproportionate to the offense is "based on the facts." (People v. Weddle (1991) 1 Cal.App.4th 1190, 1197 [2 Cal.Rptr.2d 714].) "The `techniques' to aid in determining proportionality call first for an examination of `the nature of the offense and/or the offender, with particular regard to the degree of danger both present to society.' (In re Lynch, supra,
8 Cal.3d at p. 425.) `In conducting this inquiry, however, the courts are to consider not only the offense in the abstract — i.e., as defined by the Legislature — but also "the facts of the crime in question" [citation] — i.e., the totality of the circumstances surrounding the commission of the offense in the case at bar, including such factors as its motive, the way it was committed, the extent of the defendant's involvement, and the consequences of his acts.' (People v. Dillon, supra,
34 Cal. 3d at p. 479.)" (People v. Morales (1992) 5 Cal.App.4th 917, 930 [7 Cal.Rptr.2d 358].)
In both Reed and King, the particular facts relating to the defendants and their individual offenses were examined and found to comprise "minor" indiscretions. In Reed, the court observed that the defendant was "not the prototype of one who poses a grave threat to society; nor does his relatively simple sexual indiscretion place him in the ranks of those who commit more heinous registerable sex offenses." (33 Cal.3d at p. 924; see also King, supra, 157 Cal.App.3d at p. 557.)[2]
(4c) We recognize that a statutory punishment may be cruel and unusual either on its face — or as applied to the particular defendant and offense. *Page 574 
(People v. Dillon, supra, 34 Cal.3d at pp. 479-480; People
v. Wingo, supra, 14 Cal.3d at pp. 180-182; People v.McNulty (1988) 202 Cal.App.3d 624, 632-633 [249 Cal.Rptr. 22];People v. Almodovar, supra, 190 Cal.App.3d 732, 746; In reOrosco (1978) 82 Cal.App.3d 924, 929 [147 Cal.Rptr. 463].) We do not, however, consider the mandatory registration penalty for misdemeanor violations of section 314 to be facially or inherently unconstitutional. Section 314 criminalizes a broad range of conduct, some quite deviant, some considerably less so. Mandatory sex offender registration is constitutionally precluded "if the facts and circumstances of a particular offense
indicate that the registration requirement would be cruel and/or unusual punishment under the federal and/or California Constitutions. . . ." (People v. Monroe, supra, 168 Cal.App.3d at p. 1209, italics added; see also People v. Kun, supra,195 Cal.App.3d 370, 374.) In Reed and King, registration was found a disproportionately harsh punishment for "minor" offenses, when compared with more serious crimes punished less severely in California. (33 Cal.3d at p. 926; 157 Cal.App.3d at p. 558.) The courts also noted that California stands "virtually alone" in the imposition of a registration requirement for disorderly conduct on indecent exposure. (Ibid.) Nevertheless, in both cases registration was declared cruel and unusual punishment only after an exhaustive evaluation, as demanded under the first prong of the Lynch tripartite test, of the individual culpability of the defendants. (See In reDeBeque, supra, 212 Cal.App.3d at pp. 251-252.)
(6) It is well settled that even if, as in Reed or King,
a disparity in penalties is found — between the punishment under scrutiny and that for more serious crimes in California or other jurisdictions for the same offense — it is only "some indication" that the mandatory sex offender registration is an excessive penalty. (In re DeBeque, supra, 212 Cal.App.3d at p. 255;People v. Kun, supra, 195 Cal.App.3d at p. 377; People v.Monroe, supra, 168 Cal.App.3d at p. 1216.) "`. . . [T]he measure of the constitutionality of punishment for crime is individual culpability. . . .' [Citation.]" (In re Grant (1976)18 Cal.3d 1, 10 [132 Cal.Rptr. 430, 553 P.2d 590].) Thus, even if factors 2 and 3 of the Lynch test favor a finding of disproportionality, we must examine the nature of the offense and the offender and set aside the "registration requirement under the facts of this case" only if it is "so `disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.' [Citation.]" (People v. Monroe, supra, 168 Cal.App.3d at p. 1216.) *Page 575 
(7) Our inquiry focuses upon the individual and his crime. (People v. Almodovar, supra, 190 Cal.App.3d at p. 740.) Factors such as appellant's motive, the way the offense was committed, the extent of the appellant's involvement in the crime, and the consequences of appellant's acts, must be considered in an analysis of the nature of the offense in question; our assessment of the nature of the particular offender before the court takes into account relevant facets of the character and record of appellant, including his age, prior criminality, personal characteristics and state of mind. (Enmund v. Florida (1982) 458 U.S. 782, 798 [73 L.Ed.2d 1140, 1152, 102 S.Ct. 3368]; People v. Dillon, supra, 34 Cal.3d at p. 479; People v. Young (1992) 11 Cal.App.4th 1299, 1308 [15 Cal.Rptr.2d 30]; People v. Weddle, supra, 1 Cal.App.4th 1190, 1197-1198; People v. Kun, supra, 195 Cal.App.3d 370, 375; Inre Dorothy B. (1986) 182 Cal.App.3d 509, 523 [227 Cal.Rptr. 472] ; People v. Munoz (1984) 157 Cal.App.3d 999, 1015-1016 [204 Cal.Rptr. 271].)
Looking first at the nature of the offense, we must "consider not only the offense in the abstract — i.e., as defined by the Legislature — but also `the facts of the crime in question'. . . ." (People v. Dillon, supra, 34 Cal.3d 441, 479; People v.Jeffers (1987) 188 Cal.App.3d 840, 858 [233 Cal.Rptr. 692].) Examination must be made of "`(1) the circumstances and nature of the offense and defendant's role in it. . . .'" (People v.Castillo (1991) 233 Cal.App.3d 36, 67 [284 Cal.Rptr. 382].) While in the abstract the offense of indecent exposure may be considered "relatively minor," the record before us reveals that appellant committed a significantly more egregious and troubling violation of section 314 than did the defendant in King.
(157 Cal.App.3d at p. 557.) Appellant aggressively alerted one of the witnesses, and apparently many others walking by the alley in which he appeared, to his presence with repeated comments. As distinguished from the defendant in King, he was "stroking his private parts" in an obviously lewd manner. His act of indecent exposure was not fleeting, as in King, but persisted in the alleyway for at least a few moments and was then exacerbated by his subsequent act of approaching the victims to declare, "you missed it, you missed it." When the victims again removed themselves from appellant's presence, he followed and renewed his harassment of the women by engaging in a physical struggle and making unwelcome, vulgar comments to them before finally leaving. The victims understandably described appellant's behavior as frightening. We also find in the record references to numerous prior arrests and convictions suffered by appellant, although none for "sex-related offenses" requiring registration under section 290. (Cf. Reed, supra, 33 Cal.3d at p. 919.)
The essential inquiry to be made here is "whether the registration requirement is grossly disproportionate to appellant's individual culpability." (People v. Kun, supra,195 Cal.App.3d 370, 375.) We do not believe that *Page 576 
appellant's conduct may be easily dismissed as an indiscreet gesture or "simple sexual indiscretion." (Cf. King, supra,
157 Cal.App.3d at p. 557.) Appellant's attitude was aggressive, even hostile, and the evidence suggests that his behavior may have escalated into more egregious sexual misconduct had the circumstances been different. (In re DeBeque, supra,
212 Cal.App.3d at pp. 252-254; People v. Monroe, supra,
168 Cal.App.3d at p. 1214.) Thus, the evidence supports the trial court's finding that registration was necessary to serve the purpose of insuring that if appellant repeated his criminality, his whereabouts would be known to the police to facilitate investigation or surveillance. (Ibid.)
Conceding some disproportionality,[3] which is not, in our view, "grossly excessive" so as to render the punishment unconstitutional on its face (People v. McNulty, supra,
202 Cal.App.3d at p. 634), we conclude that appellant's individual culpability justified imposition of a registration requirement. Accordingly, the judgment of the trial court is affirmed.
Strankman, P.J., and Dossee, J., concurred.
[1] All further statutory references are to the Penal Code.
[2] In Reed the "facts of the . . . case" demonstrating a "typical section 647(a) offense" were described by the court as follows: "Certain events leading to petitioner's arrest are in dispute: petitioner denies that he solicited the undercover officer. The parties do agree, however, that petitioner and the vice officer engaged in brief conversation in the public restroom, at the urinals, and that petitioner masturbated briefly in the officer's presence. The police officer was the only prosecution witness at the trial; no other persons appeared as complainants or as witnesses to the conduct. The probation report states that petitioner is an adult homosexual who has been living for the past 10 years with another man. He was once married and has three children. He served 21 years in the United States Air Force and retired honorably as a senior master sergeant. He has been steadily employed, presently with a calculator company, and has no prior arrest history." (33 Cal.3d at p. 924.)
In King, the court similarly classified the section 314, subdivision 1 offense as "minor" based on the following facts: "The parties agree King drove into the parking lot of a Pup N' Taco restaurant, got out of his car, exposed his penis to two teenage girls, then returned to his car and drove away. King was wearing shorts at the time and his penis was not erect. He did not touch or speak to either of the two girls." (157 Cal.App.3d at p. 557.)
[3] Appellant failed to produce any evidence, as was his burden, that the registration punishment prescribed for his offense was disproportionate to that imposed for more serious offenses in California or for similar offenses in other jurisdictions. (In re DeBeque, supra, 212 Cal.App.3d at p. 255.) We assume that the analyses of disparity in Reed andKing remain essentially accurate and provide "some indication" of a disproportionately excessive punishment. (Ibid.) *Page 577