Filed 5/16/16  P. v. Foster CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E062795 |
| v. | (Super.Ct.No. FWV1402270) |
| FREDERICK ALAN FOSTER, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Colin J. Bilash, Judge.  Affirmed with directions.

Marianne Harguindeguy, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Lynne G. McGinnis and Eric A. Swenson, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found defendant and appellant Frederick Alan Foster guilty of being a sexual offender who (1) failed to inform the law enforcement agency with which he last

registered that he had moved away from that city (Pen. Code, § 290.013);[1] and

(2) failing to register with the law enforcement agency in the city where he was living

(§ 290, subd. (b)).  The trial court sentenced defendant to prison for a term of three

years eight months.

Defendant raises three issues on appeal.  First, defendant contends the trial court

erred by denying his motion to dismiss the charges (§ 995) because defendant was not

legally required to register as a sexual offender.  Second, defendant asserts the trial

court erred by not staying his sentence for failing to register in his current city of

residence (§ 290, subd. (b)).  (§ 654.)  Third, defendant contends the trial court erred by

not inquiring into his reasons for wanting to file a motion for new trial.  We affirm the

judgment with directions.

## FACTUAL AND PROCEDURAL HISTORY

A.    2004 CONVICTIONS

Defendant was charged with petty theft (§ 666) and indecent exposure (§ 314,

subd. (1)).  The crimes were alleged to have occurred on or about June 6, 2004.  On

August 18, 2004, defendant pled guilty to both offenses.  The trial court withheld

pronouncement of judgment and ordered defendant conditionally released on probation

for a period of 24 months.  One of the conditions of defendant's release was that he

serve 270 days in the county jail.  The advisement of rights and waiver form did not

include information about sex offender registration.  The minute order from defendant's

---

[1] All further statutory references are to the Penal Code unless otherwise
indicated.

2

plea and sentencing does not reflect information about sex offender registration. The minute order reflects defendant accepted probation and was given a copy of the terms and conditions.

B.     2012 CONVICTIONS

Defendant was charged with being a transient who failed to register as a sexual offender every 30 days. (§ 290.011, subd. (a).) The crime was alleged to have occurred "on or about July 26, 2012." On August 8, 2012, defendant pled no contest to the charge. The trial court found defendant guilty. The trial court withheld pronouncement of judgment and granted defendant conditional release on probation for a period of 36 months. One of the conditions of the release was that defendant serve 30 days in the county jail. Other than the substantive charge of failing to register, the August 8 minute order does not include information about sexual offender registration.

C.     CURRENT CASE

An Upland City Police Department records specialist (the records specialist) meets with sexual offenders and handles the data entry for their registrations in Upland. The records specialist is able to see a person's registration requirements by looking at a state database.

The records specialist had met with defendant. Defendant had registered annually in Upland, on his birthday. Defendant last registered on June 8, 2012. As part of the 2012 registration process, defendant initialed next to a box that read, "'My responsibility to register as a sex offender in California is a lifetime requirement, unless imposed solely as a probation condition.'" Defendant also signed the form with the

3

above language.  Defendant did not register in Upland after June 8, 2012.  Defendant also did not inform Upland police that he had moved away from Upland.

On June 21, 2014, a City of Ontario police officer was dispatched to address a disturbance.  When the officer arrived at the location of the disturbance, he spoke with defendant and several other individuals.  Dispatch advised the officer that defendant was not in compliance with his sex offender registration requirements.  The officer used his computer to verify the information from the dispatcher.  The officer asked defendant where he lived.  Defendant said he lived in Ontario and had been residing there for "a couple years."

A City of Ontario police technician handled sex offender registrations in Ontario.  The technician met with registrants and entered their information into the state database.  The information was retained in (1) paper form, in a locked file cabinet in the City of Ontario Police Department, and (2) the City of Ontario's Police Department's electronic systems.  The City of Ontario did not have any sex offender registration records pertaining to defendant.  Defendant's residence was within the City of Ontario.

D.    MOTION TO DISMISS

Defendant was charged with being a sexual offender who (1) failed to inform the law enforcement agency with which he last registered that he had moved away from that city (§ 290.013); and (2) failing to register with the law enforcement agency in the city where he was living (§ 290, subd. (b)).

Prior to trial, defendant petitioned for a writ of mandate in the trial court.  Defendant asserted that, as part of his 2004 conviction, he was not advised that he was

4

required to register as a sexual offender. Defendant argued he was not advised because sex offender registration was never imposed upon him by the trial court. Defendant asserted that at the time of his plea, on August 18, 2004, the case law in effect held that requiring sex offender registration for an indecent exposure conviction constituted cruel and unusual punishment, in violation of the Constitution. (*In re King* (1984) 157 Cal.App.3d 554, 557-558 (*King I*).) Thus, defendant asserted the trial court could not have imposed a sex offender registration requirement. Defendant requested that his 2004 conviction for indecent exposure (§ 314, subd. (1)) be vacated.

The People opposed defendant's writ petition. First, the People asserted the trial court did not have jurisdiction to issue a writ of mandate to another department in the trial court. Second, the People contended defendant was legally required to register as a sexual offender. The People asserted that, in 2004, indecent exposure was an offense for which sex offender registration could be required. Additionally, the People asserted the trial court could legally require registration because there was a split of authority among the courts of appeal. The People explained that another appellate court concluded imposition of a registration requirement for indecent exposure convictions was not facially unconstitutional, rather, the analysis needed to be an "as applied" analysis, i.e., dependent on the facts of each case. (*People v. King* (1993) 16 Cal.App.4th 567, 574 (*King II*).)

Further, the People asserted defendant failed to provide evidence reflecting he was *not* required to register as a sexual offender. But, to the extent sex offender

5

registration was not imposed upon defendant in 2004, sex offender registration laws are retroactive. (*People v. Castellanos* (1999) 21 Cal.4th 785, 799.)

The People contended defendant had notice of needing to register because he had two prior cases concerning his failure to register. The People explained that the 2004 felony complaint, particularly as to the indecent exposure charge read, "'NOTICE: Conviction of this offense will require you to register pursuant to Penal Code section 290. Willful failure to register is a crime.'" The People explained this information also informed defendant of the need to register.

The trial court held a hearing on defendant's writ petition. The court and parties discussed whether the writ petition should be treated as (1) a motion to dismiss the pending charges (Pen. Code, § 995); (2) a dispute about a preliminary fact (Evid. Code, § 402); (3) a writ of mandate; or (4) as a "petition for something else in Latin." The trial court determined the issues raised by defendant concerned due process and treated the filing as a motion to dismiss (Pen. Code, § 995).

The trial court found defendant was not advised by the trial court, in 2004, of the need to register. The trial court explained (1) it may have been that there was no expectation, in 2004, that defendant would be required to register; (2) it may have been that such advisements were not read at arraignments; or (3) it may have been that defendant had an attorney appointed, in 2004, and the attorney directly advised defendant of the registration requirement. The trial court concluded that sex offender registration laws are retroactive and a person convicted of indecent exposure is now required to register as a sex offender, so therefore, in regard to the pending charges,

6

defendant was required to register as a sexual offender. The trial court denied defendant's motion to dismiss.

## DISCUSSION

### A.  MOTION TO DISMISS

Defendant contends the trial court erred by denying his motion to dismiss the charges (§ 995) because defendant was not legally required to register as a sexual offender. Defendant asserts that, in August 2004 when he pled guilty to indecent exposure (314, subd. (1)), such a conviction did not mandate sex offender registration, and registration for the offense was considered cruel and unusual punishment. Defendant concedes parties are not forever bound by the laws in effect at the time of the plea bargain, and the state has reserved the power to amend laws such as the sex offender registration laws. However, defendant asserts that, because the registration requirement was unconstitutional at the time he entered his guilty plea, it could not have been contemplated that the registration rule would change in the future.

Because this issue presents a question of law, we apply the de novo standard of review. (*People v. McKee* (2012) 207 Cal.App.4th 1325, 1338.) The present version of the sex offender registration law became effective in November 2012. (§ 290, Initiative Measure (Prop. 35, § 9, approved Nov. 6, 2012, eff. Nov. 7, 2012).) Under that law, "Any person who, since July 1, 1944, has been . . . convicted in any court in this state . . . of a violation of . . . subdivision 1 or 2 of Section 314" is required to register as a sexual offender "for the rest of his or her life while residing in California." (§ 290, subds. (b) & (c).) The registration requirement is retroactive. (§ 290.023.)

7

Defendant was convicted of indecent exposure (§ 314, subd. (1)) in 2004. In 2013 and 2014 (the years relevant to the current charges) that indecent exposure conviction required defendant register as a sexual offender. (§ 290, subd. (c).) Accordingly, we conclude the trial court did not err by denying defendant's motion to dismiss the charges—defendant was required to register as a sexual offender.

Defendant contends he could not have contemplated when he pled guilty in 2004, that he would be required to register as a sexual offender because, at that time, the registration requirement was held to be unconstitutional due to the requirement being cruel and unusual punishment. In 1984, the Court of Appeal, Fourth District, Division Three, held a sexual offender registration requirement for an indecent exposure conviction was facially unconstitutional as cruel and unusual punishment. (*King I*, *supra*, 157 Cal.App.3d at pp. 557-558.) However, in 1993, the First District, Division One Court of Appeal held an as-applied analysis must be used when determining whether imposition of a sexual offender registration requirement was cruel and unusual punishment for an indecent exposure conviction. (*King II*, *supra*, 16 Cal.App.4th at p. 574.) In *King II*, the court held it was *not* cruel and unusual punishment, under the facts of that case, to impose the registration requirement. (*Id.* at p. 576.) Thus, there was a split in the courts regarding whether sex offender registration for an indecent exposure conviction could be constitutional. As a result, defendant was on notice, in 2004, that the registration requirement could be constitutional. Accordingly, his argument that imposition of the registration requirement was unforeseeable because it was unconstitutional is unpersuasive.

8

B.    SECTION 654

Defendant contends the trial court erred by not staying his sentence for failing to register with the law enforcement agency in the city where he was living (§ 290, subd. (b)) because that offense was part of the same course of conduct as his other conviction for failing to inform the law enforcement agency with which he last registered that he had moved away from that city (§ 290.013).  (§ 654.)

Section 654, subdivision (a), provides, "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."  "[T]he purpose of section 654 is to ensure that a defendant's punishment will be commensurate with his culpability." (*People v. Correa* (2012) 54 Cal.4th 331, 341.)

This prohibition on multiple punishments extends to an indivisible course of conduct.  (*People v. Leonard* (2014) 228 Cal.App.4th 465, 498.)  "'"'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the *intent and objective* of the actor.  If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one."'"'  (*Id.* at pp. 498-499.)

"'If [a defendant] entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for independent violations committed in pursuit of each objective even though the

9

violations shared common acts or were parts of an otherwise indivisible course of conduct.'" (*People v. Leonard*, *supra*, 228 Cal.App.4th at p. 499.)

In *People v. Britt*, our Supreme Court considered whether section 654 should have been applied when a defendant was punished for both (1) failing to notify the law enforcement agency for his last city that he had moved away (former § 290, subd. (f)(1)), and (2) failing to notify the law enforcement agency for his new city that he had arrived (former § 290, subd. (a)(1)(A)). (*People v. Britt* (2004) 32 Cal.4th 944, 949 (*Britt*).)

Our high court explained the purpose of the registration law (§ 290) is to assure that people convicted of certain sexual offenses are "'readily available for police surveillance at all times.'" (*Britt*, *supra*, 32 Cal.4th at p. 952.) The court wrote, "Defendant's objective in violating this section was the opposite of the government's— to *avoid* police surveillance. To fulfill this objective, he committed *two* crimes of omission, but each crime furthered the same objective. The failure to notify the former jurisdiction (§ 290, subd. (f)(1)) and the failure to register in the new jurisdiction (§ 290, subd. (a)(1)(A)) were means of achieving the same objective—to prevent *any* law enforcement authority from learning of his current residence." (*Ibid.*)

The Supreme Court explained that the lower court was incorrect in determining the defendant had two objectives: (1) to mislead law enforcement and residents of his former community into believing he still resided there, and (2) to conceal from law enforcement and residents of his new community the fact that he was now residing

10

there.  (*Britt*, *supra*, 32 Cal.4th at p. 953.)  The Supreme Court reasoned that separating the defendant's objective by county "parses the objectives too finely."  (*Ibid.*)

The high court held, "a person subject to section 290's reporting requirements who changes residence a single time within California without reporting to any law enforcement agency, and who thus violates both subdivisions (a) and (f) of section 290, may be punished for one of those crimes, but not both."  (*Britt*, *supra*, 32 Cal.4th at pp. 954-955.)

In the instant case, defendant was convicted of failing to inform the Upland Police Department, with which he last registered, that he had moved away from the city of Upland (§ 290.013); and (2) failing to register with the Ontario Police Department, which was the city in which he was residing (§ 290, subd. (b)).  The trial court imposed a three-year prison term for the Upland conviction and an eight-month consecutive prison term for the Ontario conviction.  Given the Supreme Court's precedent on this issue, we conclude the trial court erred.  The record in this case does not disclose a separate intent peculiar to this case such that we could distinguish this case from *Britt*. It appears defendant, like the defendant in *Britt*, intended to conceal his residence from law enforcement in general.  Accordingly, we will order defendant's sentence for the Ontario conviction (§ 290, subd. (b)) to be stayed pursuant to section 654.

The People contend the trial court did not err because defendant "violated his duty to register under section 290, subdivision (b) on more than one occasion."  The People rely on the rule that "the prohibition against multiple punishment for indivisible offenses does not apply to multiple violations of the same provision.  ([*People v.*

11

]*Corrrea*, *supra*, 54 Cal.4th at p. 344.)" The People reason that since defendant was living in Ontario for "a 'couple years'" he violated the duty to register more than once, which "constituted yet another violation of his duty to register under section 290, subdivision (b).

The People's argument is not persuasive because defendant was not convicted of failing to register on a separate occasion in Ontario, a year apart from his failure to notify Upland. The acts for both convictions were alleged to have occurred "on or about June 21, 2014." Given the single date shared by the charges, and the evidence of one change of address, we conclude there was a single move from Upland to Ontario that constitutes the basis for the convictions. Accordingly, *Britt* is controlling. (See *Auto Equity Sales, Inc v. Superior Court of Santa Clara County* (1962) 57 Cal.2d 450, 456 [intermediate appellate courts are bound by Supreme Court precedent].)

### C. MOTION FOR NEW TRIAL

#### 1. *PROCEDURAL HISTORY*

At defendant's sentencing hearing, the following exchange occurred:

"The Court: [Defendant], anything you wish to say to the Court?

"The Defendant: Yeah, I would like to have a *Marsden*[2] hearing, if possible. I know it's kind of too late for that. Also—

"The Court: Well, you are entitled to it, as far as the trial goes and all that, yes. [¶] Are you requesting a *Marsden* for the sentencing?

---

**2** *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

"The Defendant: I mean, if possible because—

"The Court: You are entitled to request—

"The Defendant: If possible, because I am not actually really sure of all my motions, actually.

"The Court: I am sorry, I can't hear you.

"The Defendant: I said, if possible, if it could be.

"The Court: But you said 'because' after that, and I didn't hear that point.

"The Defendant: Well, because my motions weren't heard. And I feel that, you know—

"The Court: Well, those are basically appeal issues; I don't want to discuss that. But if you are requesting a new attorney for your sentencing, I have to honor that request—

"The Defendant: No, I understand that. I just want to make sure that my attorney understands and you understand that I did request a motion to be presented to the Court that wasn't presented.

"The Court: Well, I don't want to get into details on that on the record in open court right now. I just need to know, if you are requesting a new attorney for sentencing, I am obligated to consider that if that is your request. And I will consider that, if that is your request.

"The Defendant: Well, depending on how long will it be, an estimate.

13

"The Court: Well, I can't go by that. A *Marsden* would be heard today. But as far as the new attorney, that would be delayed. If a new attorney was granted, then the sentencing will be delayed.

"The Defendant: No estimate of how long?

"The Court: I didn't hear your question.

"The Defendant: Is there any estimate on how long it will be?

"The Court: I can't estimate that. It would depend on getting an attorney in here and then seeing what they wanted to do.

"The Defendant: Never mind.

"The Court: You want to just go ahead?

"The Defendant: I guess so. I mean, if there's no—I mean, it seems like you guys can find exactly how much time I could do—

"The Court: Right.

"The Defendant: —but there's no way to find out how much time it will take to get it done for me—

"The Court: Hold on.

"The Defendant: —so I don't understand that at all.

"The Court: Hold on, [defendant]"

The Court then held a *Marsden* hearing. At the *Marsden* hearing, the following discussion occurred:

"The Court: [Defendant], the reason I cut you off is because I don't want you saying some things that may be personal that have to do with your case alone. And it is

14

not a motion that should be heard in open court; okay? [¶] But now I will listen to your request or what your issues are. [¶] Now, obviously, anything that happened during the trial—let me just start with this, based on the comments you told me and then you can tell me where you want to go from there.

"Based on the comments that you indicated to me, it seems like you have a number of issues about what your attorney may or may not have done related to the trial. If that is the case, all those issues—and after I sentence you, I will advise you of your appeal rights, and all those issues can be reviewed on appeal. As part of your appeal rights, you will be appointed a new attorney if you request one.

"If you are requesting a new attorney prior to your sentencing and I grant that, then [your trial counsel] would be relieved, I would appoint a new attorney. I don't know if that attorney will be here today or not, but at no worse than tomorrow, if that were to happen. But then that attorney, obviously, would get some time to get up to speed on your case. That would be up to the attorney. It is just a ballpark, so there would be that delay. [¶] And then they will proceed on your sentencing; that new attorney wouldn't have the opportunity to review the things that you might be talking about for trial. I mean, unless—

"The Defendant: I'm just—

"The Court: —you're requesting an attorney for a Motion for New Trial.

"The Defendant: I understand. I don't have time for the delay. All I'm stating is, I know it's kind of too late to put in certain motions that should have been pushed during the trial.

15

"The Court: Okay.

"The Defendant: But I asked—I spoke to my attorney when he entered the court, and I wanted to know if he presented these motions to you as far as my appeal, as far as the grounds of my appeal. But I don't know that, because I don't approach the bench when both the D.A. and the attorney approach the bench. That's why I was saying, if these could be heard, I wanted to make sure that you heard of this—mention of the motion, if that was possible, so that I could know exactly what's taking place. Because it's—like, I don't know what's taking place, why it's being delayed.

"The Court: Are you requesting [your trial counsel] to present a Motion for New Trial for you?

"The Defendant: That's what was supposed to be done last time; that's why I asked for a jury trial or a Court trial by you last time.

"The Court: [Defense Counsel], I am not going to ask you directly to comment on that. [¶] You want to run a Motion for New Trial based on what you believe [your trial counsel] did not do during trial; would that be correct?

"The Defendant: Based on what took place during the trial.

"The Court: All right. [¶] Well, I will appoint an attorney to evaluate a Motion for New Trial because you are basing that on the competency of your counsel, basically; is that correct?

"The Defendant: Yeah; exactly.

"The Court: Okay.

16

"[Defendant's Trial Counsel]: Your Honor, I think that issue goes up on appeal about what I did; that's an appeal issue. I am going to file a Notice of Appeal on this case so that issue of whether I was IAC or not, that is going to be something that's going to be taken up, anyway.

"The Court: I know, but it is also a proper Motion for New Trial. If it lies—

"[Defendant's Trial Counsel]: All right.

"The Court: —it is a proper Motion for New Trial.

"[Defendant's Trial Counsel]: Okay.

"The Court: So I am not granting the *Marsden*, but I will appoint an attorney to look into the issue as to whether or not there is a Motion for New Trial. [¶] That's all I can do, [defendant]. If that attorney determines there isn't, then the motion will not be filed and then you will have your appeal rights. If they determine that it should be filed, they will file it. But there will, obviously, be a delay. [¶] Are you willing to waive time for your sentencing to allow a new attorney to consider a Motion for New Trial?

"The Defendant: That's why I was asking, how long will it take? That's what I—

"The Court: There's no answer to that question. I mean, you would have to talk to your attorney about that.

"(The defendant conferred with his attorney.)

"[Defendant's Trial Counsel]: I am ready, Your Honor. [¶] And by [the] way, for the record, I deny everything that he just said.

17

"The Court:  I understand.  [¶]  So, [defendant], are you willing to waive time for sentencing to allow me to appoint an attorney to investigate the possibility of filing a Motion for New Trial, or do you wish to be just sentenced today and then take advantage of any appeal rights on any issues—

"The Defendant:  I will go for the second offer.

"The Court:  You would just like to be sentenced today and then—

"The Defendant:  Yeah, the second, and the—

"The Court:  And take advantage of any appeal rights on any issues you may have?

"The Defendant:  Yeah."

The trial court denied the *Marsden* motion, sentenced defendant, and informed him of his appellate rights.

2.     *ANALYSIS*

Defendant contends the trial court erred by not listening to his reasons for wanting to file a motion for new trial.

"'When, after trial, a defendant asks the trial court to appoint new counsel to prepare and present a motion for new trial on the ground of ineffective assistance of counsel, the court must conduct a hearing to explore the reasons underlying the request. [Citations.]  If the claim of inadequacy relates to courtroom events that the trial court observed, the court will generally be able to resolve the new trial motion without appointing new counsel for the defendant.  [Citation.]  If, on the other hand, the defendant's claim of inadequacy relates to matters that occurred outside the courtroom,

18

and the defendant makes a "colorable claim" of inadequacy of counsel, then the trial court may, in its discretion, appoint new counsel to assist the defendant in moving for a new trial.'" (*People v. Smith* (1993) 6 Cal.4th 684, 693.)

In the instant case, defendant said he wanted to file a motion for new trial based upon ineffective assistance of counsel. The alleged ineffectiveness appeared pertain to omissions on the part of defendant's trial counsel. We infer the alleged ineffectiveness related to omissions because defendant said, (1) "because my motions weren't heard"; (2) "I wanted to know if he presented these motions to you"; (3) "it's kind of too late to put in certain motions that should have been pushed during the trial"; and (4) "I did request a motion to be presented to the Court that wasn't presented." Given that the alleged ineffective assistance pertained to omissions, in particular, the failure to present a motion or motions, it did not concern events the trial court could have observed. Therefore, the trial court correctly concluded it would need to appoint counsel to assist defendant in moving for a new trial.

The trial court told defendant, "I will appoint an attorney to look into the issue as to whether or not there is a Motion for New Trial." Accordingly, the trial court offered defendant his requested relief—counsel to assist in filing a motion for new trial based upon ineffective assistance of prior counsel. There was no need for the trial court to delve deeper into defendant's reasons for the motion because the trial court offered to grant defendant's request. Given that the trial court offered to grant defendant the relief he wanted, we conclude the trial court did not err.

Notably, defendant changed his mind and declined the appointment of an attorney for the purpose of filing a motion for new trial because defendant did not want to delay his sentencing hearing. We cannot fault the trial court for defendant's decision to decline the trial court's offer. (See *People v. Coffman* (2004) 34 Cal.4th 1, 49 [under the doctrine of invited error, a defendant cannot gain a reversal for a tactical decision made by the defense].)

## DISPOSITION

Defendant's eight-month prison sentence for violating section 290, subdivision (b) (Count 2) is stayed pursuant to section 654. The trial court is directed to issue an amended abstract of judgment and forward a copy of the amended abstract to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
Acting P. J.

We concur:

CODRINGTON
J.

SLOUGH
J.

20